UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PATRICK S.,[1]

                                   Plaintiff,              **DECISION AND ORDER**

v.                                                        1:23-cv-1205-JJM

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.

_____


        Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to

review the final determination of the Commissioner of Social Security that he was not disabled.

Before the court are the parties' cross-motions for judgment on the pleadings [8, 10].[2] The

parties have consented to my jurisdiction [13]. Having reviewed their submissions [8, 10], the

Commissioner's motion is granted, and plaintiff's motion is denied.


                                **BACKGROUND**

        The parties' familiarity with the 1,067-page administrative record [5] is presumed.

On November 30, 2018, plaintiff filed an application for Supplemental Security Income, alleging

a disability beginning September 3, 2014. Administrative Record [5] at 22. At the time, plaintiff

alleged the conditions of non-verbal learning disability, depression, high blood pressure, high

cholesterol, and hypoactive thyroid. Id. at 62. Plaintiff was then 22 years old. See id. at 61.

_____

[1]      In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]      Bracketed references are to the CM/ECF docket entries. Page references to the administrative
record are to the Bates numbering.  All other page references are to the CM/ECF pagination.

Plaintiff's claim was denied initially and again on reconsideration. Id. at 22. Plaintiff requested a hearing. Id. at 22.

**A.     The Hearing**

On April 7, 2022, Administrative Law Judge ("ALJ") Linda Crovella conducted a video hearing. [5] at 40-60. Plaintiff was represented by an attorney. Id. At the hearing, plaintiff testified that he had previously worked as a dishwasher and was then working as a restaurant host, but only four hours per week. Id. at 48. He asked his manager for more hours. Id. He lived with his parents and adult brother. Id. at 49. He did not drive and relied on others to drop him off. Id. He graduated from high school and completed one semester of college. Id. at 50.

Plaintiff testified that he cannot work a full-time job because his mother has cognitive issues, and he helps her out with daily activities, such as laundry, dishes, and vacuuming. Id. at 50. He sometimes needs help with money transactions at work. Id. at 51. He was able to remain calm when dealing with upset customers. Id. at 51-52. He initially had oversight from a "job coach" at work, but she later stopped coming in. Id. at 52. His father took care of scheduling medical appointments for him. Id. at 53. He did not use computers or the internet due to an incident in which he threatened a professional athlete on social media, and the police became involved. Id. at 54.

A vocational expert testified that a person with limitations consistent with ALJ Crovella's hypothetical could perform work in the national economy. Id. at 57-58. He testified that such person could perform those jobs even if limited to superficial interaction with the public. Id. at 58.

**B.      The ALJ's Decision**

On June 2, 2022, ALJ Crovella issued a Notice of Decision denying plaintiff's claim. Id. at 19-39. She found that plaintiff had severe impairments of a learning disorder and depressive disorder. Id. at 25. She found he would have mild limitations in the areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. Id. at 26.

ALJ Crovella further found that plaintiff would have moderate limitations in the area of adapting or managing himself in light of the incident in which he made threats online. Id. at 27. While she noted a mental health evaluation which suggested that such an incident may have been a "manifestation of social-emotional reciprocity deficits", she assigned only mild limitations in social interaction due record evidence that he was polite and respectful at school, engaged with vocational counselors appropriately, and was noted to be "friendly and cooperative" with adequate social skills on consultative examination. Id. at 26.

ALJ Crovella found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but would be limited to following simple instructions for two-hour periods, performing simple tasks with no production rate or quota, no use of a computer, and superficial interaction with the public. Id. at 27-28. While plaintiff had no past relevant work, ALJ Crovella found that there were jobs that existed in significant numbers in the national economy that he could perform. Id. at 32-33. Accordingly, she found that plaintiff was not disabled. Id. at 33.

**C.      Relevant Medical Evidence**

Stephen Farmer, Psy.D. performed a consultative examination of plaintiff. Id. at 629. Dr. Farmer noted a psychiatric hospitalization in 2018 for depression and suicide attempt.

Id. Plaintiff attended outpatient treatment for those issues and was discharged recently. Id. He was taking Prozac, which he reported to be "very helpful". Id. On examination, Dr. Farmer observed plaintiff to be "friendly and cooperative" with adequate manner of relating and social skills. Id. at 630. Other mental status findings were normal, with both insight and judgment being assessed as "fair". Id. Plaintiff was able to handle most basic daily activities. Id.

Dr. Farmer opined that plaintiff would have "mild" limitations in understanding complex directions, using reason and judgment, regulating emotion and behavior, and awareness of hazards and precautions. Id. at 631. Plaintiff would have "mild to moderate" limitations in interacting adequately with supervisors, coworkers, and the public, and in sustaining concentration and pace. Id. Dr. Farmer concluded that his examination was "consistent with psychiatric problems, but in itself, [such problems] do[] not appear to be significant enough to interfere with claimant's ability to function on a daily basis". Id. He recommended a "thorough evaluation to rule out mild autism", continuation of medication, and vocational rehabilitation. Id.

ALJ Crovella found Dr. Farmer's opinion to be "generally persuasive" as supported by his mental status examination and plaintiff's minimal history of mental health treatment. Id. at 31-32. However, she found Dr. Farmer's "rule out diagnosis" of autism unpersuasive, as plaintiff did not undergo evaluation for that impairment. Id. at 32.

State agency psychologist S. Juriga, Ph.D. reviewed plaintiff's treatment history and Dr. Farmer's report, and opined that plaintiff's mild limitations evidenced no severe mental health impairments. Id. at 67. ALJ Crovella found Dr. Juriga's opinion not persuasive, as she believed that plaintiff had at least some severe mental health impairment. Id. at 31.

On reconsideration, state agency psychologist T. Bruni, Ph.D. reviewed the same sources but also noted that vocational counselors identified deficiencies in plaintiff's ability to

understand instructions and maintain attention. Id. at 77-78. Dr. Bruni assessed plaintiff with

mild limitations in the ability to understand, remember, or apply information; to interact with

others, and to concentrate, persist or maintain pace; and with moderate limitations in the ability

to adapt or manage oneself. Id. ALJ Crovella found this opinion generally persuasive as

consistent with the record evidence and with her RFC. Id. at 31.

## ANALYSIS

Plaintiff argues that ALJ Crovella's decision was unsupported by substantial

evidence because: (1) she failed to properly assess his conduct disorder and its resulting

symptoms; (2) she failed to properly assess plaintiff's social limitations regarding interaction

with supervisors and coworkers; and (3) she erred by excluding certain limitations expressed in

the vocational evidence and failing to obtain supplemental medical opinion evidence. Plaintiff's

Memorandum of Law [8-1] at 15-31.

## A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant

is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate

to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197,

229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th

353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence

standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It

requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator evaluating a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      Did the ALJ fail to assess plaintiff's adjustment/conduct disorder?**

Plaintiff argues that ALJ Crovella failed to properly assess his "conduct disorder" at any step and failed to account for any associated limitations in her RFC determination. Plaintiff's Memorandum of Law [8-1] at 15-20. Plaintiff points to a June 18, 2021 treatment record from BestSelf Behavioral Health Inc., which occurred after the online threat incident, which noted a diagnosis of "Adjustment disorder[], With disturbance of conduct". [5] at 988; *see* id. at 993. This record does not describe why that diagnosis was reached, or what, if any, symptoms or limitations such a condition might produce. Id.

At step two, the ALJ must determine whether plaintiff has a medically determinable impairment, or combination of impairments, that is "severe". 20 C.F.R. §416.920(a)(ii). A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques". §416.921. A "severe" impairment (or combination of impairments) is a medically determinable impairment that "significantly limit[s] your physical or mental ability to do basic work activities". §416.922(a).

While ALJ Crovella did not address the adjustment disorder diagnosis at step two, she noted the existence of this treatment record, diagnosis, and the lack of any accompanying

evaluation in her review of the record in conjunction with making her RFC determination. [5] at

30; *see* <u>Donna L. v. Commissioner of Social Security</u>, 2024 WL 3738067, *1 (N.D.N.Y. 2024)

("the ALJ's decision must be read as a whole and findings made in other sections can inform a

reviewer of the basis of the ALJ's . . . finding[s]"). She also noted that the incident precipitated

conversations between plaintiff and his father about his feelings. <u>Id.</u> at 30.

   Aside from this single treatment record, there is no other mention in the medical

evidence of this condition. The treatment records are devoid of any finding that this condition

significantly limited plaintiff's ability in any functional or vocational way. *See* [5] at 980-99.

Thus, there is no evidence that this condition was a "serious" impairment, nor that it had any

impact on plaintiff's RFC. "Ultimately, it is Plaintiff's burden to prove a more restrictive RFC

than the RFC assessed by the ALJ." <u>Beaman v. Commissioner of Social Security</u>, 2020 WL

473618, *6 (W.D.N.Y. 2020). Plaintiff does not meet his burden here.

   Further, the statute requires that a disabling condition be one that can "result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months". 42 U.S.C. §1382c(a)(3)(A). Typically, "[a]djustment disorder is a *temporary*

mental disorder 'of varying severity that occurs as an acute reaction to overwhelming stress'."

<u>Reyes v. Colvin</u>, 2016 WL 5239685, *5 (S.D.N.Y. 2016) (medical citation omitted) (emphasis

added). "If symptoms last for more than six months it is considered persistent". <u>Id.</u> A single

notation during a course of treatment spanning over three years suggests that this condition was

not persistent. Accordingly, the condition cannot be disabling.

**C. Did the ALJ properly account for plaintiff's social limitations?**

   Plaintiff next argues that ALJ Crovella erred in assessing his limitations in

interacting with others. [8-1] at 19-24. While ALJ Crovella found that plaintiff could have only

"superficial interaction with the public", she did not specify any limitations regarding coworkers or supervisors. [5] at 28.

It is well established that the ALJ, not any medical source, is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2), 416.946(c), 416.927(d)(2); *see* Curry v. Commissioner of Social Security, 855 F. App'x 46, 48 (2d Cir. 2021). As such, the RFC need "not perfectly correspond with any of the opinions of medical sources cited in [the] decision", and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013); *see* Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022). Ultimately, "[t]he question is . . . whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 F. App'x 98, 101 (2d Cir. 2017)).

ALJ Crovella generally credited the psychological opinions of Dr. Bruni and Dr. Farmer, who opined that plaintiff would have "mild" or "mild to moderate" social limitations, respectively. Id. at 77, 631. Though often employed by consultative examiners, terms like "mild" and "mild to moderate" are imprecise and subject to interpretation where, as here, they are left undefined in functional terms. *See* Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013); Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000). ALJ Crovella thus considered these opinions in conjunction with record evidence that plaintiff successfully maintained part-time employment, was noted to be polite and respectful by teachers, and engaged appropriately with medical sources and vocational counselors, and she assessed plaintiff with an overall "mild" limitation in interacting with others. [5] at 26, 27, 29, 31.

While mild limitations must be considered by the ALJ in formulating the RFC, she may properly conclude that specific restrictions are not warranted. *See* Lynett W. v. Commissioner of Social Security, 2021 WL 868625, *4 (W.D.N.Y. 2021) ("mild limitations do not necessarily require the addition of mental limitations in the RFC"). There is nothing in the record that would necessarily require greater restrictions than assessed by ALJ Crovella, nor can it be said that her determination is not supported by substantial evidence. For those reasons, it must be affirmed.

**D.    Did the ALJ properly assess the vocational evidence?**

Finally, plaintiff argues that ALJ Crovella failed to assess vocational counselor Ms. Szymula's opinion or incorporate her opinion that plaintiff would require the assistance of a "job coach" to keep him on track at work. [8-1] at 25-26. He also argues that the record lacked opinion evidence that considered all of Plaintiff's mental impairments, and thus was incomplete. Id. at 28-29.

While the post-2017 Social Security regulations relax the hierarchy among medical opinion evidence, an ALJ is still "not required to articulate how [she] considered evidence from *nonmedical* sources using the requirements [regarding assessing supportability and consistency]". 20 C.F.R. §416.920c(d) (emphasis added). A vocational counselor is a nonmedical source. *See* Michael K. v. Commissioner of Social Security, 2022 WL 3346930, *6 (W.D.N.Y. 2022). Thus, ALJ Crovella committed no legal error by not formally evaluating Ms. Szymula's opinion.

Nor did ALJ Crovella disregard Ms. Szymula's opinion. Rather, she noted Ms. Szymula's conclusion that plaintiff "may have some difficulty following multiple directions and attending to several tasks at once". [5] at 26, 29. Accordingly, her RFC determination limited

plaintiff to following "simple instructions for two[-]hour periods with standard breaks" and that such tasks would not be at "production rate" or with "strict quotas". Id. at 27-28, 31. However, ALJ Crovella noted that plaintiff was successfully engaged in independent work and that his services, including assignment of a "job coach", had been terminated. Id. at 26, 29.

While plaintiff points out that this work was only four hours per week, it was still within the ALJ's purview to consider it. See 20 C.F.R. §416.971 ("[e]ven if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did"). As ALJ Crovella noted, plaintiff represented that his ability to work more hours was limited by circumstances, specifically, caring for his mother and additional hours not being available, rather than any mental limitations. [5] at 27.

Thus, the record presented conflicting evidence on the issue of whether plaintiff was capable of additional independent work, and the ALJ was well within her authority to resolve such conflict. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("[g]enuine conflicts in the medical evidence are for the Commissioner to resolve"). As her resolution is explained with supporting evidence, the court is precluded from reaching a contrary conclusion. See Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) ("[plaintiff's] disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it").

Contrary to plaintiff's further argument, the rejection of opinion evidence does not necessarily create a "gap" in the record. See Schillo, 31 F.4th at 76 ("a deficiency in reasoning by a [treating source] is not the same as a gap in treatment records"). On the contrary, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history', the ALJ is under no obligation to seek additional

information". Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996); *see* Timothy D. v. Commissioner of Social Security, 652 F. Supp. 3d 387, 394 (W.D.N.Y. 2023). Further, it was reasonable for the ALJ to rely on  plaintiff counsel's representation at the hearing that the record was complete. *See*, *e.g.*, Curley v. Commissioner of Social Security, 808 F. App'x 41, 44 (2d Cir. 2020) (rejecting an argument that the ALJ failed to develop the record when, *inter alia*, plaintiff's hearing attorney declined to indicate that the records were outstanding).

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [10] is granted, and plaintiff's motion [8] is denied.

**SO ORDERED**.

Dated: March 27, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge

-11-